On August 6, 1945, plaintiff was in the employ of the co-partnership of Nelson Cooley (composed of Floyd Nelson and Dempsey Cooley), sawmill operators, and while engaged in his duties in loading a truck with logs, he sustained an accident by logs striking him and breaking his right hip joint. Immediately after the accident his employers took him to the clinic of Dr. J. D. Frazar in De Ridder, Louisiana, where he was placed under the care of Dr. Frazar. Dr. Frazar found that he had a compound fracture of the right femur, and *Page 528 
reduced the fracture and then placed a body cast on the plaintiff and used traction. It is shown that this first body cast was broken, obviously for the reason that plaintiff insisted on rolling back and forth in his bed, and, thereafter, a second body cast was placed on plaintiff by Dr. Frazar, and shortly thereafter he was permitted to return to his home with the admonition that he should remain quietly in bed. He returned to his home on September 1st, and came back to visit Dr. Frazar's clinic during the first week in November, and according to his version at that time his cast was removed. Dr. Frazar testifies that upon his return to the clinic during the first week of November, 1945, the cast had already been removed. In any event, it is shown that at that time plaintiff's fracture was in the same condition as when originally injured and that for some reason, although the fracture had been properly reduced by Dr. Frazar, an overlapping had occurred between September 1st and the first week of November. Plaintiff sues the insurer of Nelson Cooley for compensation at the maximum rate of $20 per week from the date of his injury, August 6, 1945, for a period of 400 weeks, less compensation payments heretofore made.
It is shown by the pleadings and by stipulation between counsel for plaintiff and defendant that the accident arose in the course of employment as alleged; that the defendant is the insurer of the employer; that the accident occurred on August 6, 1945, in Beauregard Parish, and that plaintiff was earning wages sufficient to entitle him to compensation at the maximum rate of $20 per week; that as a result of the accident the plaintiff sustained a compound fracture of his right femur; that defendant paid compensation to plaintiff at the rate of $20 per week from August 6, 1945, through October 16, 1946; that the defendant offered plaintiff an operation to be performed by Dr. Guy Caldwell of New Orleans to remove or reduce disability; that said operation was offered as late as August 6, 1946.
The defense to plaintiff's suit was that the sole cause of plaintiff's disability was his willful refusal to cooperate with the physician supplied him by defendant. Defendant contends that because of plaintiff's lack of cooperation with Dr. Frazar, he broke the first cast placed on him by rolling and tossing in bed, contrary to instructions, and that when the second cast was placed on him, in spite of repeated instructions, he continued the same acts of failing to remain quietly in bed and moreover that he punctured a hole in the cast with a wire or coat hanger, and failing to remain in bed, fell down; that these acts resulted in the overlapping which occurred after the second cast was placed on him. They further contend that plaintiff removed the second cast before returning to the Frazar clinic, and contrary to instructions, and that upon his return he refused to permit Dr. Frazar to apply a third cast. They contend that if plaintiff had cooperated with the physician, he would have recovered within 12 months from the date of injury and could then have resumed his work, and that because his condition is due directly to his own wilful lack of cooperation no further compensation is due him.
On trial of the case the trial judge found that, while plaintiff had been uncooperative to some extent, yet his condition could not be attributed to that, but was due to natural causes; that he was totally and permanently disabled and that to correct this disability would necessitate a major operation, which was dangerous and uncertain and that, therefore, under the law, did not have to be submitted to by plaintiff. Accordingly, he rendered judgment in favor of the plaintiff for workmen's compensation at $20 per week for 400 weeks, beginning August 6, 1945, less a credit for payments previously made, plus legal interest on delinquent payments and all costs.
After rendition of this judgment the defendant filed a motion for a new trial on the ground of newly discovered evidence, naming in the motion specific witnesses, by which it could he shown that the second body cast was removed prior to plaintiff's return to the Frazar clinic in the first week of November, 1946. This motion for a new trial was denied and defendant has appealed. *Page 529 
The only questions before us on appeal are: (1) Should the trial judge have granted defendant's motion for a new trial so as to give it the opportunity of showing that the second body cast was removed prior to plaintiff's coming to the clinic as contended by defendant and was not removed at the clinic as contended by plaintiff? (2) Was disability due to his wilful refusal to cooperate with the physician supplied him by defendant?
With reference to whether or not the second cast was removed at the clinic or before plaintiff arrived at the clinic is the testimony of plaintiff himself, of his employer, Floyd Nelson, and of Dr. Frazar.
Plaintiff testified that in the first week of November he went to the Frazar clinic with the cast on, for the purpose of having the cast removed. His testimony on the subject matter is significant:
"Q. Who took the cast off? A. There was a nurse — I don't remember, but there was a nurse there. Mr. Austin Doyle at Singer was the one who cut the cast off of me." This testimony is subject to two interpretations, one, that the nurse saw or did the removal of the cast at the clinic; the other that Mr. Austin Doyle cut and removed the cast at Singer and not at the clinic. It is noted that neither the nurse nor Mr. Doyle testified in the case. There is no explanation of the absence of their testimony. We feel that their testimony is relevant to the issue presented herein.
Mr. Nelson testified that he is the one who took plaintiff to the clinic for the purpose of an examination and removal of the cast. On the other hand, Dr. Frazar testifies positively that plaintiff did not have the cast on when he saw him at the clinic.
The trial judge, for his written reasons for judgment, appears to have reached the conclusion that the cast was removed at the clinic, but that Dr. Frazar did not see the plaintiff until after its removal. It seems strange that the doctor would have permitted the removal of the cast without his instructions and that, even if removed without his instructions, that he would have had no knowledge or information thereof.
It is material to know definitely how and when this second cast was removed. Certainly, it would indicate some lack of cooperation on the part of plaintiff, if he arbitrarily removed this cast or had it removed contrary to the instructions of his physician.
As to the contention of defendant that plaintiff wilfully failed to give his cooperation in his treatment, in addition to the facts involved with reference to the second cast, we have the definite admission of plaintiff that he rolled around in bed contrary to instructions and that as a result his first cast was broken and the second cast had to be applied. We also have his admission that he persuaded Dr. Frazar to allow him to return home on September 1, 1945. We, of course, have no testimony as to his conduct at home, except that of plaintiff and his wife. They both testify that when he arrived home he was suffering from itching and his wife states that she found on him a large number of body lice and head lice, and plaintiff contends that these lice were the reason for his being so uncomfortable at the clinic and for his rolling around in bed while at the clinic; that subsequent to the removal of the lice, he remained in bed quietly.
Dr. Frazar testified that his clinic was in a sanitary condition at all times, and in that respect, he is corroborated by other physicians and by his hospital nurse. He attributes the breaking of plaintiff's first cast entirely to plaintiff's failure to remain in bed quietly and tossing and rolling in bed, and that he attributes the return of plaintiff's disability between September 1st and the first week of November, 1945, to plaintiff's own acts. He states that on September 1, 1945, X-Ray and fluoroscopic examinations showed that plaintiff's fracture was perfectly reduced, and in position to heal if plaintiff had followed instructions. He states further that plaintiff told him, when he returned to the clinic, after the second cast had been removed, that he had fallen, and, in effect, that such fall was sufficient to have caused the damage. It may be noted here that plaintiff denies having told Dr. Frazar that he had fallen, but, while he and his wife both stated that he remained quietly in bed, he does admit *Page 530 
that he slipped once or twice on his crutches. Dr. Frazar is positive that the sole cause of plaintiff's continued disability is his lack of cooperation in the accepted treatment of fractures of this type. He states that he has been treating fractures of this type for many years and that, where the patient cooperates, full recovery should be effected within six to twelve months.
Mrs. W. F. Weber, a registered nurse, testified that she attended the plaintiff from the time of his admittance into the clinic until he left, and she corroborates Dr. Frazar with reference to his treatment of plaintiff and with reference to plaintiff's lack of cooperation. She states that she saw plaintiff roll about in bed on several occasions, that she warned him that he should not do this; that notwithstanding he was restless and rolled and broke his cast.
Dr. Floyd Beckcom testified, in answer to the hypothetical question: "Doctor, was the turning from side to side by Andrew Pierce and the breaking of the cast, together with the further information that he fell after he left the hospital, were those acts on his part the proximate cause or the real cause of his present disability?", answered:
"They might very well be the cause. That would be the most obvious cause if those assumptions were true".
The doctor testifies from his examination of X-Rays of plaintiff's fracture and from his experience in such cases it was his opinion that plaintiff under proper treatment (as in this case) should have recovered within three to six months. He admits that where an active man with a fracture as is involved in this case is put into a cast, even if there is traction on it, occasionally there is "overlapping" but he states that this method is used because it gives universally good results.
Dr. Luke Marcello testified that he examined X-rays of plaintiff and found an old fracture of the right femur with nonunion. He expressed the view that such a fracture, where the bones are healthy as in this patient's case, should heal within approximately six months. He expresses the further opinion that plaintiff's present condition is probably due to the breaking of his cast, but that if the second cast was not broken, he does not believe that the mere moving around in bed would have caused the overlapping, for the reason that the cast, if undisturbed, would, not permit movement of the hip. He states "He would have had no overlapping had there been no breaking of the cast." He further states that in his opinion the bones would have joined properly if he had permitted the cast to remain on him, without breaking it and if he had received no fall. Dr. Marcello expressed the opinion that in spite of the fact that plaintiff had a past history of two unsuccessful casts, that by open reduction "regardless of when the operation is done, I think the ultimate results are the same. It should correct the fracture." He admits that as set forth in the letter from Dr. Caldwell, the third operation would be more serious than either of the first two, for the reason that you would have to proceed through a surgical operation for open reduction.
There is a serious question as to whether or not plaintiff's present condition, which renders him totally and permanently disabled, is attributable to his own acts of non-cooperation with his physician or to natural causes. There is no question that in his present condition he is totally disabled within the terms of the Compensation Law, and that his disabled condition cannot be corrected except by a major operation, to which he does not have to consent. Possibly the trial judge was correct in interpreting the situation liberally in favor of the employee, and thereby granting him judgment; but we have our serious doubts, especially in view of the medical testimony, which preponderates in favor of the proposition that had plaintiff cooperated in his treatment he would have recovered from his injury within one year. Moreover, we are of the opinion that the testimony sought to be had on re-hearing with reference to the removal of the second cast is material in determining whether or not plaintiff was guilty of wilful lack of cooperation.
With the evidence presently in the record, we are unable to answer the main question of whether or not plaintiff's disability *Page 531 
is due to his wilful refusal to cooperate with the physician supplied him by defendant.
Article 906 of the Code of Practice gives this court the discretion in remanding a case where the record is not in a condition to enable the court to pronounce definitely on the case, or where the parties have failed to produce available testimony which might be material in a proper decision of the case and exercising that discretion we will remand the case.
For these reasons assigned, it is ordered that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered that the case be remanded to the district court for the introduction of such additional evidence, relevant to the case, as either plaintiff or defendant, or both, may desire to offer, and in accordance with the views herein expressed; costs to await the final judgment to be rendered herein on the remand of the case, or on the appeal from such judgment.